Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 3302 | **DATE** | 9/13/2001 |
| **CASE TITLE** | Williams vs. Elyea, M.D., et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order granting defendants' motions for summary judgment. Judgment is therefore entered in favor of defendants and against plaintiff. Any pending motion in this case is terminated as moot. All schedules including pretrial conference set for 10/17/01 and trial set for 10/29/01 are also vacated.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 3 | **Document Number** |
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | SEP 1 4 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | 63 |
| ✓ | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 SEP 13 PM 6:17 | 9/13/2001 date mailed notice | |
| MPJ | courtroom deputy's initials | Date/time received in central Clerk's Office | MPJ mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILLIP WILLIAMS,             )
                              )
        Plaintiff,             )
                              )
    v.                         )
                              )   No.  99 C 3302
WILLARD ELYEA, M.D., JOSEPH    )
SMITH, M.D., and PAULA TIMM,   )
R.N.,                          )
                              )
        Defendants.            )

DOCKETED
SEP 14 2001

### MEMORANDUM OPINION AND ORDER

Phillip Williams, an inmate at Stateville Correctional Center in Joliet, Illinois, sues Dr. Willard Elyea, Dr. Joseph Smith, and Nurse Paulette Timm for violation of his Eighth Amendment rights under 42 U.S.C. § 1983. All three defendants move for summary judgment. I grant the motions.

I.

Under Local General Rule 56.1(b)(3), the response of a party opposing summary judgment must contain "a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon" and a statement of any additional facts that require the denial of summary judgment, similarly supported by evidence. If the nonmoving party completely fails to respond to the moving party's statement, he will be deemed to have admitted all of the facts in the moving party's statement. L.R. 56.1(b)(3)(B). It is within my discretion

63

to enforce the Local Rules strictly. *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1316 (7th Cir. 1995). Mr. Williams filed a response to Dr. Smith's and Nurse Timm's Local Rule 56.1(a) statement, but he failed to adequately dispute most of the allegations, and he filed no response at all to Dr. Elyea's Local Rule 56.1(a) statement.

Paragraphs 10-13, 15, 18, 22-24, 27 and 32 of Mr. Williams' response merely state that "Plaintiff is without knowledge or information sufficient to admit or deny the statements contained in Defendants' [corresponding] paragraph." This "equivocation [i]s an admission, not a denial." *Karazanos v. Madison Two Assocs.*, 147 F.3d 624, 626 (7th Cir. 1998). Paragraphs 7, 19, 25 and 30 are general denials that contain no reference to evidence in the record, and thus are insufficient to effect a denial. *See Valenti v. Qualex, Inc.*, 970 F.2d 363, 369 (7th Cir. 1992). Mr. Williams comes forward with evidence only in response to paragraphs 8, 9, 16, 17 and 20; the balance of Dr. Smith's and Nurse Timm's facts are admitted. Mr. Williams' response memorandum contains additional facts which are not contained in his response to Dr. Smith's and Nurse Timm's 56.1(a) statement, but he filed no statement of additional facts as required by Local Rule 56.1(b)(3)(B).[1]

---

[1] The document filed by Mr. Williams is titled "Plaintiff's Rule 56.1(b) Response and Statement of Additional Facts, but there are no additional facts provided in the form required by Local Rule 56.1(b)(3)(B).

2

Although the Local Rules do not "explicitly set forth the consequences of failing to provide a statement of additional facts," it is within my discretion to exclude any facts not set forth in accordance with the Local Rules, and I do so here. *Midwest Imports*, 71 F.3d at 1316-17.

II.

Mr. Williams is incarcerated in Stateville Correctional Center. On June 24, 1998, while eating dinner, a piece of metal in Mr. Williams' food cut his inner left cheek. He was immediately taken to Stateville's Health Care Unit by a guard, seen by a Correctional Medical Technician ("CMT"), and referred to a physician.[2] The CMT's evaluation showed that there was a small laceration (approximately half an inch) on the inside of Mr. Williams' cheek, but no active bleeding, discharge or redness was noted. The physician examined Mr. Williams, gave him a tetanus shot, and ordered x-rays to check for pieces of metal internally; all of the x-rays were normal. The physician determined that the cut was too small to require stitches.

On July 2, 1998, Mr. Williams began a hunger strike to protest the quality and condition of the food at Stateville. Inmates who declare hunger strikes are transferred to the infirmary unit for observation for the duration of the strike, but some are housed

---

[2] Neither the CMT nor the physician that treated Mr. Williams on the day of his injury is a party to this action.

3

there as "administrative holds" and are not admitted as patients to the infirmary. Mr. Williams was housed in the infirmary as an administrative hold and was never admitted as a patient.

Nurse Timm worked in the infirmary during Mr. Williams' stay there. Dr. Elyea, as the medical director at the time, was the "attending physician" for all inmates who were actually admitted to the infirmary; he was responsible for their medical care and treatment, which included periodic "rounds" to check vital signs or progress. Dr. Smith was a staff physician, which meant that he generally saw patients only through "sick call" procedures. Under "sick call" procedures, an inmate must first be evaluated by a nurse or CMT, who provides appropriate medical care to the inmate, or if necessary, refers the inmate to a physician. Inmates merely housed in the infirmary for administrative holds, as opposed to those actually admitted for treatment, are subject to "sick call" procedures. Mr. Williams was familiar with "sick call" procedures. Both Drs. Smith and Elyea walked through the infirmary unit in the course of performing their duties. It was the practice of both doctors to refer inmates to the "sick call" if they called out about non-emergent conditions while the doctors walked through the unit. If an inmate complains of pain, a nurse or CMT may dispense over-the-counter medications without a prescription from a doctor.

Mr. Williams' claims against the defendants arise out of their alleged inattention to pain in his jaw and requests for medication

4

while he was housed in the infirmary for the duration of his hunger strike, from July 2nd to 20th. He says that, although he cannot exactly recall the date, two or three weeks into his stay in the infirmary he "spoke to [Nurse Timm] about the pain [he] was having in [his] jaw." He admits that she looked at his jaw, but complains that she did nothing about the pain. However, he admits that he did not ask for any pain medication at the time. Nurse Timm's notes on Mr. Williams' chart indicate that on July 19, 1998, he said he wanted "to see M.D. for soreness in l. mouth/inside cheek." Her notes also say that "no open areas or redness [were] seen when examined." Nurse Timm saw Mr. Williams the next day, and he did not complain about his mouth or request any pain medication.

Neither Dr. Smith nor Dr. Elyea remembers seeing Mr. Williams while he was in the infirmary. According to Mr. Williams, however, Dr. Smith came to his cell sometime on July 14th or 15th. Mr. Williams says that he told Dr. Smith "about the problem that [he] was having, [the] pain in [his] jaw," but that Dr. Smith did not examine his mouth, and instead "said that there was nothing he could do, and he left." According to Mr. Williams, during the same time frame, he called out to Dr. Elyea while the doctor was making his rounds in the infirmary. Dr. Elyea apparently came to the window of his infirmary cell. Mr. Williams "told Dr. Elye[a] that [he] was having pain in [his] jaw [and asked] 'Anything -- or can you do something for me?'" Dr. Elyea said "That's not my job" and

5

left. Mr. Williams' claims against the defendants are limited to these interactions while he was housed in the infirmary unit.

Mr. Williams does not dispute that he was seen by a nurse or CMT at least once every day that he was in the infirmary, and often more than three times a day. On at least twenty-one separate occasions, Mr. Williams refused medical care in the form of vital sign checks, physical examinations and urine specimen tests. Mr. Williams now claims that he has a "knot" on his inner left cheek; the "knot" is a 2 millimeter firmness caused by scar tissue. He says that it irritates him when he eats and brushes his teeth, and that "the pain come[s] and go[es]." Mr. Williams does not offer any evidence here describing the pain that he claims to have suffered while he was in the infirmary unit, but when asked to describe the current problem, he said that it feels like "pinching" and described it as "an uncomfortable feeling."

### III.

Summary judgment is proper when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether a genuine issue of material fact exists, I must construe all facts in the light most favorable to the non-moving parties and draw all reasonable and justifiable inferences in their favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "A genuine issue of fact 'exists only when a

reasonable jury could find for the party opposing the motion based on the record as a whole.'" *Culver v. McRoberts*, 192 F.3d 1095, 1098 (7th Cir. 1999).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed the by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citations omitted). To state a claim for deliberate indifference, an inmate must show that (1) his medical need was "objectively, 'sufficiently serious,'" *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997), and (2) the defendants "acted with the 'requisite culpable state of mind, deliberate indifference,' which is a subjective standard," *Reed v. McBride*, 178 F.3d 849, 852 (7th Cir. 1999).

"A serious injury or medical need is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999). A serious medical need need not be life-threatening, *Gutierrez*, 111 F.3d at 1371; it is enough that the "injury for which assistance is sought is sufficiently serious or painful to make the refusal of assistance uncivilized," *Cooper v. Casey*, 97 F.3d 914, 916 (7th Cir. 1996). Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." *Gutierrez*, 111 F.3d at 1372.

7

> A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue--the sorts of ailments for which many people who are not in prison do not seek medical attention--does not by its refusal violate the Constitution.

*Cooper*, 97 F.3d at 916. However, a condition need not "produce 'objective' symptoms" to be serious; "[p]ain, fatigue and other subjective, nonverifiable complaints are in some cases the only symptoms of a serious medical condition." *Id.* at 917.

Mr. Williams' cause of action is based on Nurse Timm's failure to refer him to a physician, and the failure of all defendants to give him over-the-counter pain medication. If all he was seeking was over-the-counter pain medication, he admits that this was something a nurse or CMT could provide, so a referral to a physician was unnecessary. The only question, then, is whether it violated the Eighth Amendment to deny him pain medication. Mr. Williams offers no evidence of his medical condition at the time of the incidents in question other than general allegations of "pain"[3] in his jaw that began sometime two or three weeks after he arrived in the infirmary and was "constant." The objective evidence shows that, on the day of the injury, twenty-five days before he complained to Nurse Timm, he had a quarter-inch minor laceration in his cheek that was not actively bleeding, had no discharge, and was

---

[3] In his response memorandum, Mr. Williams characterizes his pain as "severe" and "agonizing." These adjectives do not appear in his Local Rule 56.1(b) response, nor is this characterization supported by any of the testimony to which he cites in his Local Rule 56.1(b) response.

8

not red. The day that he complained to Nurse Timm, she observed no open areas or redness. In January 1999, Mr. Williams was referred to a specialist for evaluation of the lump in his cheek, and he went for a follow-up appointment in September 1999. The specialist performed a biopsy and concluded that the lump was a "two-millimeter firmness" in his left inner cheek, "most likely due to scar tissue."

While there no dispute that Mr. Williams was in some pain, there is no evidence that, at the time of his encounters with the three defendants, his condition was "objectively, 'sufficiently serious.'" Nurse Timm did not think referral to a physician was necessary, and there is no evidence to suggest that a layperson would have thought that a doctor's attention or pain medication was necessary. *See Henderson*, 196 F.3d at 846. Drawing all inferences in favor of Mr. Williams, he suffered at most from mild mouth pain as a result of a laceration that was inflicted three weeks earlier. The mouth being a sensitive area, one can imagine that he experienced some "distress and discomfort," but this is "not the sort of objectively serious injury or medical need that amounts to a denial of 'the minimal civilized measure of life's necessities.'" *Id.* (holding that "breathing problems, chest pains, dizziness, sinus problems, headaches and a loss of energy[ ]are, objectively speaking, relatively minor"); *see also Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996) (Removal of toenail without anesthetic,

9

though painful, was "not the type of barbaric treatment the Eighth Amendment was intended to prevent."); *Sonds v. St. Barnabas Hosp. Corr. Heath Servs.*, 151 F. Supp. 2d, 303, 311 (S.D.N.Y. 2001) (Cut finger, even where skin "ripped off," is not sufficiently serious as a matter of law).

Mr. Williams suggests that his injury was "neither a 'tiny scratch' nor did it result in minor aches and pains,'" but he comes forward with no evidence to the contrary. He suggests that his allegations of pain entitle him to a jury determination that he suffered from a serious medical condition. However, it is clear that not *every* allegation of pain is sufficient to avoid summary judgment. In *Cooper v. Casey*, the Seventh Circuit held that the question of whether the plaintiffs were in sufficient pain to entitle them to pain medication within 48 hours of their injury was a question for the jury because pain is a "uniquely subjective experience." 97 F.3d at 917 (ruling on post-trial motion). There the plaintiffs had been kicked, beaten and maced by prison guards, and they had "cuts, severe muscular pain, and . . . a burning sensation in their eyes and skin." *Id.* at 916. There the question was the severity of injuries in the first two days after they were inflicted by the same prison guards who later denied treatment. *Id.* Mr. Williams does not challenge the initial medical attention to his wound, and there is no evidence of new injury. Mr. Williams complained to the defendants of pain from an injury not caused by

10

them, and three weeks after it happened. The Eighth Amendment does not protect against all pain, only "needless pain and suffering." *Gutierrez*, 111 F.3d at 1371.

> Arguably, all pain beyond what is necessary to keep the mind cognizant of an untreated ailment is "needless." It would be nice if after appropriate medical attention pain would immediately cease, its purpose fulfilled; but life is not so accommodating. Those recovering from even the best treatment can experience pain. To say the Eighth Amendment requires prison doctors to keep an inmate pain-free in the aftermath of proper medical treatment would be absurd.

*Snipes*, 95 F.3d at 592.

Mr. Williams also urges me to consider the low cost of the treatment he sought: over-the-counter pain medication. Indeed, the Seventh Circuit has "observe[d] that the civilized minimum is a function both of objective need and of cost. The lower the cost, the less need has to be shown, *but the need must still be shown to be substantial.*" *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999) (emphasis added). There, as a result of radiation treatment for cancer, the plaintiff had painful blisters in his throat that prevented him from swallowing and caused him to split blood. *Id.* The court also noted that "[r]ealism requires recognition that the terror which cancer inspires magnifies the pain and discomfort of the frequent side effects of cancer treatments." *Id.* Here, Mr. Williams claims that he was traumatized by finding a piece of metal in his food; indeed, this is what drove him to his hunger strike in the first place. There is no indication in the record of side effects of his condition at the time of his complaints to the

11

defendants, but he now complains only of occasional discomfort while eating and brushing his teeth. This is a far cry from spitting blood. Objectively, the extent of his injury and its cause are less severe than those of the plaintiff in *Ralston*, and do not constitute a "sufficiently serious" medical need.

Even if I were to conclude that Mr. Williams satisfied the objective part of the deliberate indifference inquiry, I find that he falls short of showing that the defendants had a sufficiently culpable state of mind. To be liable, the defendants must have known of and disregarded "an excessive risk to inmate health or safety; the official must both [have been] aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and he must also [have drawn] the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). However, I may not look at the alleged acts of denial in isolation; I "must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs." *Gutierrez*, 111 F.3d at 1375. In *Gutierrez*, the court said that isolated incidents of delay, balanced against ten months of prompt, extensive treatment, did not amount to deliberate indifference. *Id.* In *Dunigan v. Winnebago County*, 165 F.3d 587 (7th Cir. 1999), the court held that "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to defeat summary judgment. *Id.* at

591. Mr. Williams urges me to consider *Reed v. McBride*, 178 F.3d 849 (7th Cir. 1999), where the court held that "[w]hile [the plaintiff] often received adequate care, there were allegedly a number of occasions that were 'markedly atypical,' and not . . . isolated examples of neglect." *Id.* at 855-56. The court noted that this was "exactly the kind of case where 'mistreatment for a short time' would be evidence of a culpable state of mind." *Id.* at 856.

Here, however, there are at most three instances of neglect, one by each of the defendants. Although Mr. Williams said in his Local Rule 56.1(b) response that he recalled "repeatedly" asking for medication from the defendants, his testimony, even viewed in the light most favorable to him, does not support that allegation. He testified to one conversation each with Drs. Smith and Elyea, and he testified that he *saw* Nurse Timm many times, not that he asked her for medication or discussed his pain with her each time he was her. Nor is there any evidence that any of the three encounters were "markedly atypical." Nurse Timm examined his mouth, according to "sick call" procedures, and concluded that no referral to a doctor was necessary. Both Drs. Smith and Elyea testified that it was their normal practice, when inmates from the general population (of which Mr. Williams was still a member, though he was housed in the infirmary) complained of non-emergent conditions or requested over-the-counter pain medication, to refer them to the "sick call." Their responses of "that's not my job" and "I can't

13

help you" may indicate callous bedside manner, but they fall short of unconstitutional indifference. "The ability to obtain immediate medical care on demand is a luxury enjoyed by few outside prison walls. Prisoners can expect no more." *Black v. Lynn*, No. 85 C 8515, 1989 WL 88478, at *4 (N.D. Ill. Aug. 1, 1989) (Aspen, J.). It is not deliberate indifference to require a patient to go through proper administrative channels to seek relief for a non-emergent condition.

Mr. Williams was housed in the infirmary for nineteen days; his medical chart shows more than fifty separate visits from nurses, CMTs, doctors and psychologists. He was treated promptly when he originally cut his cheek, and he was even referred to a specialist twice in 1999 to address his continuing complaints related to the "lump" in his cheek. Viewed in the totality, even if Mr. Williams' treatment on the three occasions he alleges "fell short, there was no clear indication of lack of concern." *Dunigan*, 165 F.3d at 592. The defendants' motions for summary judgment are GRANTED.[4]

ENTER ORDER:

*Elaine E. Bucklo*
**Elaine E. Bucklo**
United States District Judge

Dated: September 13, 2001

---

[4] The court thanks appointed counsel, Anthony Hopp, for his representation of plaintiff in this case.

14